| 58 | 51 |
|----|----|
| 208 | 41 |

# McClurg's Appeal.

1. Contracts restraining the exercise of a trade, &c., in particular localities, when there is reasonable ground for the restriction, are valid.

2. An agreement for a valuable consideration not to practise medicine within twelve miles of a particular locality is not unreasonable, and the exercise of the profession within the prescribed limit may be restrained by injunction.

3. The court will not inquire into the *adequacy* of the consideration.

January 20th 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. STRONG,· J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Chester county* : In equity.

Dr. Benjamin Thompson filed a bill against Dr. John R. McClurg, averring as follows: That the defendant, being a practising physician at Chandlerville, Chester county, agreed, on the 22d of January 1859, with the plaintiff to sell him his office fixtures and furniture, &c., with his good-will in his profession, for $125, and bound himself to remove not less than twelve miles from the place, and never thereafter to establish himself as a physician within twelve miles without the plaintiff's consent, to use his influence to throw his practice to the benefit of the plaintiff, and give countenance to no other in that direction; averring further that the defendant had established himself as a physician within five miles of his former location without the plaintiff's consent. The bill prayed that he might be restrained from practice in his present location, and from establishing himself elsewhere within the prescribed limits.

[McClurg's Appeal.]

The answer alleged that the fixtures, &c., were worth at least $300; that the agreement as written did not contain the whole agreement of the parties; that the restraint was to have application only so long as the plaintiff should remain on the property then occupied by the defendant, that the plaintiff had ceased to occupy that property, and the defendant had not interfered and did not intend to interfere with the plaintiff's practice.

The case was referred to Joseph Hemphill, Esq., as examiner and master.

The agreement given in evidence is dated January 22d 1859, and, besides the agreement to sell to the plaintiff the defendant's fixtures, &c., "with the good-will of his profession," for $125, contains this covenant:—

"The said J. R. McClurg hereby binds and pledges himself to remove not less than twelve miles from his present location, and for ever hereafter not to establish himself in the practice of his profession, within twelve miles, without the free consent of the said Dr. Thompson; also to use all his influence to throw all his practice to the benefit of the said Thompson, and to give countenance to no other in that direction."

The evidence of plaintiff was that defendant moved away in the spring of 1859, and the plaintiff left his residence, gave up his practice at another place and went into the property where he remained till the summer of 1864, when he moved to a house about three quarters of a mile from it, and shortly afterwards removed about a quarter of a mile further, he continued to practise as a physician; defendant moved to Prestonville, five or six miles from his former place, with the declared intention of practising as a physician; that there was nothing in the article to which the defendant had not assented.

The defendant gave evidence that $125 was the price only of the articles sold, and the scrivener added " good-will;" also that the restraint was applicable only whilst the plaintiff occupied defendant's former place.

The master reported that the evidence sustained the allegations of the bill, and that there was no evidence offered of fraud or mistake in drawing the agreement, and reported in conclusion:—

" Upon the whole, neither fraud or mistake having been established, the subscriber is of opinion that the plaintiff having proven his bill, and the defendant failed to establish any effective answer thereto, the law and equity of the case gives to the plaintiff the right to the injunction prayed for and costs of suit."

Exceptions were filed by the defendant to the report which was confirmed, and the court (Butler, P. J.) decreed that " an injunction be issued, restraining the defendant from establishing himself in the practice of his profession of medicine, within the limits of twelve miles from the location on the 22d day of January

1859, or remaining, as at present established within said limits, and from practising his said profession within the circle of his practice at the date aforesaid.''

The defendant appealed, and assigned the decree for error.

*W. Darlington,* for appellant, referred to 2 Story's Eq. 79; Keeler *v.* Taylor, 3 P. F. Smith 467; Kimberly *v.* Jennings, 1 Sim. 340.

*W. Mac Veagh* and *J. S. Futhey,* for appellee, referred to Mitchel *v.* Reynolds, 1 P. Wms. 181; Keeler *v.* Taylor, 3 P. F. Smith 467; Nichols *v.* Stratton, 7 Beav. 42; Sainter *v.* Ferguson, 7 Manning, Gr. & Scott 716; Rawlinson *v.* Clark, 14 M. & W. 187; Hitchcock *v.* Coker, 6 Ad. & Ellis 438; Mott *v.* Mott, 11 Barb. 127; Smith *v.* Smith, 4 Wend. 468; 1 Smith's L. C. 518; Palmer *v.* Graham, 1 Pars. 476.

The opinion of the court was delivered, January 28th 1868, by
SHARSWOOD, J.—That contracts restraining the exercise of a trade or profession in particular localities are valid, when there is a fair and reasonable ground for the restriction, as in the case of the sale of the good-will of a trade or business when the vendor covenants not to pursue the same business within certain prescribed limits, is beyond question. The leading case is Mitchel *v.* Reynolds, 1 P. Wms. 181, in which C. J. Parker delivered a long and elaborate opinion. The doctrine has been at rest ever since, as Lord Kenyon declared in Davis *v.* Mason, 5 T. R. 118, in which a bond by a surgeon not to practise within ten miles of the place where the obligee lived. was held good, and a similar undertaking by an apothecary, not to set up his business within. twenty miles, was sustained in Hayward *v.* Young, 2 Chitty 407. The appellee had therefore a clear legal right under his contract. Ought a court of equity to enforce it by injunction?

When Mr. Eden wrote his valuable treatise on the law of injunction he stated that he had not been able to find any reported cases in which the court had interfered by that process to restrain the breach of such a covenant. He admits, however, that it may be inferred from Lord Eldon's observations in Crutwell *v.* Lye, 17 Ves. 335, that there is no reasonable objection to the exercise of such a jurisdiction: Eden on Injunctions 223, 224. In that case, however, there was no contract, but merely the sale of a trade, with the good-will, which without express covenant, or fraud, was held not to prevent the vendor from setting up the same business. Lord Eldon said, " a man might stand by and give encouragement generating a confidence* that he would not engage in such a trade, inducing other persons to involve themselves; on the ground of which conduct this court

might interpose." If equity would enforce an implied contract within reasonable limits, a fortiori they ought to interfere in the case of an express one. Accordingly several subsequent decisions both in England and America have acted on this principle. Harrison *v.* Gardner, 2 Madd. Ch. Rep. 198, was the case of a retiring partner, who, according to the statement of the bill, had given an assurance verbally that he would not set up in the same line of business in the street in which it had been carried on before, or its immediate vicinity. The Vice-Chancellor, Sir Thomas Plumer, said, "Suppose there was no dispute as to the facts stated in the bill, but that they were admitted, it is clear the court would relieve." In Williams *v.* Williams, 2 Swanst. 253, Lord Eldon granted an injunction in a similar case of a retiring partner where, however, there was an express agreement in writing. Butler *v.* Burleson, 16 Vermont 176, was like this, a contract between two practising physicians, and it was enforced by injunction. "When there is an express covenant," said C. J. Williams, "and an uncontroverted mischief arising from the breach of it, equity will grant an injunction to restrain the breach. In this case there is an express contract. The mischief arising from the breach of it cannot be repaired, nor can it well be estimated. A suit at law would afford no adequate remedy, and the damages will be continuing and accruing from day to day, and furthermore, the object of the contract can only be obtained by the parties conforming expressly and exactly to its terms. It seems, therefore, to be a very proper case for a court of chancery to enforce the contract by granting an injunction to prevent the breach of it, according to the acknowledged principle on which courts of equity act in similar cases." The same doctrine was maintained in Beard *v.* Dennis, 6 Indiana 200. Judge King also recognised it as established in Palmer *v.* Graham, 1 Pars. 476, and awarded an injunction on the ground of the inadequacy of an action at law to give the party aggrieved a full and perfect remedy for such a breach of good faith.

We see nothing to distinguish this from the cases cited. It has been objected that the consideration was inadequate. Upon that subject C. J. Tindal, delivering the opinion of the Court of Exchequer Chamber, in Hitchcock *v.* Coker, 6 Ad. & Ellis 438, said: "If there is no consideration, or a consideration of no real value, the contract in restraint of trade, which in itself is never favored in law, must either be a fraud upon the rights of the party restrained or a mere voluntary contract, *nudum pactum*, and therefore void. But if by adequacy of consideration, more is intended, and that the court must weigh whether the consideration is equal in value to that which the party gives up or loses by the restraint under which he has placed himself, we feel ourselves bound to differ from that doctrine. A duty would thereby

[McClurg's Appeal.]

be imposed upon the court, in every particular case, which it has no means whatever to execute. It is impossible for the court, looking at the record, to say whether in any particular case, the party restrained has made an improvident bargain or not." This is not like a bill for the specific performance of an unexecuted contract, where, if the bargain is a hard one, or founded on an inadequate consideration, a chancellor will refuse to interfere, but leave the party to his legal remedy. This agreement was fully executed. The appellant removed, and the appellee on the faith of it gave up his practice at the place where he was before established, and settled in the new neighborhood. He cannot be put in *statu quo*. We cannot by our decree restore to him the practice he has given up, nor could any damages a jury would give be an adequate compensation. Even if it should be a sum which would purchase a life annuity equal to his former income, that would not provide for that increase from year to year which enlarged experience and widening reputation would, in all probability, have insured to him had he remained where he was. The appellant has returned and established himself within the prescribed limits in violation of his agreement. It was said that he did not mean to interfere with the appellant's practice; but how can he well avoid it if he is called upon by his old patients and others? It was with a view to this that the contract stipulated that he should not establish himself in the practice of his profession within twelve miles. This distance was doubtless named because it was considered sufficient to render the practice in the appellant's old circle, reaching a distance of five or six miles on either side, secure to the appellee. We agree with the court below that such a restraint is not unreasonable, nor greater than the appellee's protection may require.

Decree affirmed at the costs of the appellant.

C. J. Thompson dissented, not on the ground of want of power in the court, but because not a case in which specific performance should be decreed, but the party left to his action at law.