## Erie County Milk Association *v.* Ripley, Appellant.

*Contracts—Agreements in restraint of trade.*

Any agreement in restraint of trade is void as being against public policy, unless founded upon a valuable consideration, and, as regards time, space and the extent of the trade, limited to what is reasonable under the circumstances of the case, for the reason that such contracts tend to deprive the public of the services of parties in the employments and capacities in which they are most useful, and so tend to expose the public to the evils of monopoly. Whether or not a contract is void as being in restraint of trade and against public policy, and whether the restraint is reasonable, are questions of law for the court to determine.

On a bill in equity to enforce a covenant in restraint of trade it appeared that the plaintiff and defendant entered into a written contract by which the latter was employed at a salary of $45.00 per month. The contract contained the following provision : "It is expressly agreed by the second party (the defendant), in consideration of his employment as aforesaid and the payment to him of the wages herein provided, that he will not for the space of one year after the termination of this contract, peddle or furnish milk directly or indirectly, or assist or become interested in furnishing milk directly or indirectly in the city of Erie or vicinity, except to the Erie County Milk Association." The consideration for the services was $45.00 per month. The defendant about four months after his employment voluntarily quit the service of the plaintiff and within the prescribed period purchased a milk route in the city of Erie, consisting of about 115 customers, whom he continued to supply up to the time of the filing of the bill. *Held*, that a decree in favor of the plaintiff should be sustained.

Argued May 20, 1901.   Appeal, No. 96, April T., 1901, by defendant, from decree of C. P. Erie Co., Sept. T., 1900, No. 15, on bill in equity in case of Erie County Milk Association v. E. C. Ripley.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Bill in equity for an injunction.

From the record it appeared that on December, 1899, the parties entered into a written agreement which was as follows :

"That the said Erie County Milk Association, party of the first part, hereby agrees to employ the party of the said party of the second part in the capacity of milk peddler, for a term of service to commence on the 19th day of December, 1899, and to continue until terminated as hereinafter provided, upon the fol-

lowing terms and conditions, each and all of which constitute the consideration for the execution of this agreement by first party :

" 1. The said E. C. Ripley is to devote his entire time and attention to his duties as milk peddler for said first party and to perform the duties thereof to the satisfaction of said first party. Said second party shall be personally liable to the Association for the price of all milk entrusted to him for delivery, except 5 per cent for dippage, after the 15th day of January, 1900.

" 2. This contract may be terminated by either party giving to the other party fifteen days' notice, such notice given to or by the manager, in writing, of an intention to terminate the same, except in case of wilful neglect of duty by second party or in case of his incapacity properly to perform his duties for any reason, except temporary illness not caused by his own conduct; second party may be subject to immediate discharge from the service of the first party without notice.

" 3. Second party shall give to first party a satisfactory bond in the sum of two hundred ($200) dollars, conditioned for his faithful compliance with all the terms and conditions of this agreement, and for the payment to first party of all moneys collected by him on its account.

" 4. Second party agrees that his employment by first party shall be subject at all times to reasonable rules and regulations of said Milk Association and to the orders and directions of its general manager.

" 5. That the said second party in case of the termination of this contract, shall for the space of at least seven days assist the person employed in his place by first party in learning the route.

" 6. It is expressly agreed by second party in consideration of his employment as aforesaid and the payment to him of the wages herein provided, that he will not for the space of one year after the termination of this contract, peddle or furnish milk directly or indirectly, or assist or become interested in furnishing milk directly or indirectly in the city of Erie, or vicinity, except to the Erie County Milk Association.

" 7. In consideration whereof, the said first party agrees to pay to the second party the sum of forty-five ($45) dollars per month, for the time during which said second party is actually

employed hereunder.   The wages for each month to be paid on the 10th day of each succeeding month."

WALLING, P. J., found the facts to be as follows:

4. That pursuant to said agreement the defendant entered into the employment of the plaintiff on December 19, 1899, and continued in such employment until April 27, 1900, when he voluntarily quit the service of the plaintiff, having given plaintiff notice of his intention so to do more than fifteen days prior thereto, according to the provisions of the contract.   That during the time he worked for the plaintiff he was paid at the rate of $45.00 per month, receiving in all from the plaintiff the sum of $198.

5. That on July 11, 1900, the defendant purchased a milk route, in the city of Erie, consisting of about 115 customers, and from that time up to the present time has been engaged in the business of delivering milk daily to his customers on said route.

6. The evidence shows that prior to the time of the hearing in this case the defendant had supplied milk, since he purchased said route, to one customer whom he supplied when peddling for the plaintiff, and he seems to have had some talk or negotiations with reference to supplying milk to other parties who had formerly taken milk of the plaintiff, and as a milk peddler he is now and has been since July 11, 1900, supplying milk to any parties in the city of Erie who may desire the same.

7. That the plaintiff was incorporated in October, 1899, and seems to have had nine charter members.   That since said incorporation the number of stockholders therein has been increased. So far as I recall, the evidence fails to show the exact number of stockholders at the present time.   That the stockholders of said association, or at least some of them, were engaged in the milk business as individuals, in the city of Erie and vicinity, prior to the formation of said corporation, and that on becoming members of said corporation they sold their individual milk routes, etc., to said corporation, and received the stock of the corporation therefor.   That said stockholders, on becoming members of said corporation, executed and delivered to said corporation an agreement, which is in blank as follows:

" Know all men by these presents, that I,
of the county of Erie, Pennsylvania, in consideration of the is-

sue to me of                    shares of the capital stock of the
Erie County Milk Association, a corporation organized under
the laws of the state of West Virginia, of the par value of $50.00
each, do hereby sell, assign, transfer and set over unto the said
corporation, all my right, title and interest in the milk route now
operated, and supplied by me in the city and county of Erie
aforesaid, together with the good will of the same and of the
customers thereon, and for the consideration aforesaid, receipt
of which is hereby acknowledged, I hereby covenant and agree
with the said corporation that I will not either directly or indi-
rectly hereafter supply or sell any milk on the said route to any
of the customers thereof for a period of five years from and after
this date unless I should be employed by said corporation so to
do; for the consideration aforesaid, I further agree not to en-
gage directly or indirectly in the peddling or supplying of milk
to the public within the city or vicinity of Erie, or to any per-
sons, firms or corporations therein except the said Erie County
Milk Association or its stockholders, for a period of five years
from this date.

" I further agree in consideration of the issue of said shares
of stock as aforesaid, that I will not sell or transfer said shares
to any other person or persons without having first offered said
shares to the said Erie County Milk Association at the same
price at which I may have the opportunity to sell the same to
any other person or persons.

" In witness whereof, I have hereunto set my hand and seal
this                    day of November, 1899.

                                "            (L. S.)
                                "            (L. S.) "

8. That the carrying on of said milk route by the defendant
has a tendency to injure the plaintiff's business, but the exact
amount of damages which plaintiff has or might sustain up
until April 27, 1901, cannot be ascertained from any evidence
given in this case; and from the nature of the case it is not
practical to ascertain that such damages are or would be.

9. That by the by-laws of the said plaintiff corporation, said
corporation, or rather its officers, have the right to fix the price
at which milk is bought and sold by said corporation.

The court found the following conclusions of law:

1. That the section contained in the above recited contract between the defendant and the plaintiff was and is reasonably necessary for the protection of plaintiff's business, and that said section is founded upon a valuable consideration, and is such a partial restraint of trade, being limited both as to time and territory, as will be enforced in a court of equity.

2. That from the nature of the case the plaintiff has no adequate remedy at law.

3. That the penal sum named in said bond is a penalty and not liquidated damages, and does not oust the jurisdiction of a court of equity.

4. That the chartered purposes of said corporation are lawful, and that the above recited contract made on December 18, 1899, between the plaintiff and defendant, is a lawful and valid contract, and that it is immaterial to this case whether or not the said agreements made between the plaintiff and certain of its stockholders, as set forth in the eighth above finding of fact, are lawful or unlawful, as plaintiff does not make out its case by the aid of said agreements or any of them.

5. That a decree should be made, enjoining and restraining the said defendant from peddling or furnishing milk, directly or indirectly, and from assisting or becoming interested in furnishing milk, directly or indirectly, in the city of Erie, except to the plaintiff, from this time until April 27, 1901, and also that the defendant should pay the costs of this proceeding.

*Error assigned* was decree awarding an injunction.

*Albert B. Osborne*, with him *George M. Mason*, for appellant.— Employment at wages is not such a sufficient consideration for defendant's agreement that it will warrant what is practically a decree of specific performance: Seward v. Shields, 9 Pa. Dist. Rep. 583.

There should be no doubt of the terms or of the consideration on which it is founded, in a contract in restraint of trade : Hall's App., 60 Pa. 458 ; Keeler v. Taylor, 53 Pa. 467.

Agreements in restraint of trade generally, are void.   To give them validity they must be limited in time, or partial on their operation, and be supported by a sufficient consideration : Harkinson's App., 78 Pa. 196 ; Cleaver v. Lenhart, 182 Pa. 290.

But even if a sufficient consideration affirmatively appeared, the violation of the naked legal right that would then exist in the plaintiff would not justify the extraordinary remedy of an injunction unless from the evidence it affirmatively appeared that substantial and irreparable injury would actually result: People v. Canal Board, 55 N. Y. 390; Genet v. Del. & Hudson Canal Co., 122 N. Y. 529; Morgan v. Binghamton, 102 N. Y. 500; Harkinson's App., 78 Pa. 204; Wahl v. Methodist Episcopal Cemetery Assn., 197 Pa. 197; Troy & Boston R. R. Co. v. Boston & R. R. Co., 86 N. Y. 107; McHenry v. Jewett, 90 N. Y. 62.

· The contract between the utter destruction of defendant's property which would follow the decree, and the total lack of appreciable benefit which would result to complainants from the granting of it, is so great as should, of itself, have led the court to leave the plaintiffs to their remedy at law: Mackintyre v. Jones, 9 Pa. Superior Ct. 543; Becker v. Lebanon & Ry. Co., 188 Pa. 494; Hilman v. Lebanon & St. Ry. Co., 180 Pa. 628; Chartiers Block Coal Co. v. Mellon, 152 Pa. 299; Harkinson's App., 78 Pa. 204.

One of the fundamental principles adopted by courts of equity in bills for specific performance is that there must be a mutuality of remedy: Meason v. Kaine, 63 Pa. 340; Sands & Co. v. Arthur, 84 Pa. 481; Ballou v. March, 133 Pa. 67; Bodine v. Glading, 21 Pa. 53; Dill v. Doebler, 62 Conn. 366.

A court of equity will not restrain the violation of a restrictive covenant in an ordinary contract for work and labor as the remedy at law is deemed sufficient: Mandeville v. Harmon, 7 Atl. Rep. 40.

*Henry E. Fish*, with him *John S. Rilling*, for appellee.—Contracts restraining the exercise of a trade or the carrying on of a business in certain localities or for limited terms are valid. Such contracts have been held good in law from the earliest times, and breaches of the same have been restrained by injunction in the courts of this commonwealth in numerous cases: McClurg's App., 58 Pa. 51; Smith's App., 113 Pa. 579; Stofflet v. Stofflet, 160 Pa. 529; Patterson v. Glassmire, 166 Pa. 230; Cooper v. Edeburn, 198 Pa. 229; Betts's App., 10 W. N. C. 431; Carroll v. Hickes, 10 Phila. 308; Eckart v. Gerlach, 12 Phila.

530; Phila. Ball Club v. Hallman, 8 Pa. C. C. Rep. 57 ; American Association v. Pickett, 8 Pa. C. C. Rep. 232 ; Harbison v. Mawhinney, 8 Pa. Dist. Rep. 697 ; 6 Brewster's Practice (Equity), 459–460.

It appearing that the contract was based upon two considerations, each of which was of real benefit and value to the appellant, to wit: employment and wages, he cannot now raise the question of their adequacy : Huffcut's Anson's Law of Contracts, 90, 91 ; Hind v. Holdship, 2 Watts, 104; McClurg's App., 58 Pa. 51 ; Smith's App., 113 Pa. 579.

But even if the court would inquire into the adequacy of the consideration in this case, when the value thereof is apparent, does it not appear to be sufficient and substantial ? Evans v. Ware, L. R. (1892) 3 Ch. 502; Fellows v. Wood, 59 Law Times Rep. 513; Proctor v. Sargent, 2 Manning & Granger, 20; Carroll v. Hickes, 10 Phila. 308 ; Phila. Ball Club v. Hallman, 8 Pa. C. C. Rep. 57.

The nature of the plaintiff's business made the restriction reasonably necessary for its protection.

The defendant has not been restrained from laboring as a wage earner, but from conducting an independent business as a proprietor and employer of labor, in general competition with the plaintiff.

An injunction will issue to restrain the breach of a negative covenant, when the breach is clearly shown, by reason of the inadequacy of the legal remedy, without proof of actual damage : Pomeroy's Equity Jurisprudence, sec. 1344; Wilkinson v. Colley, 164 Pa. 35 ; Bispham's Equity, sec. 461, et seq ; St. Andrew's Church's App., 67 Pa. 519; Emrick v. Groome, 4 Pa. Dist. Rep. 511.

There is no lack of mutuality in the contract : Grove v. Hodges, 55 Pa. 504.

OPINION BY BEAVER, J., July 25, 1901 :

Beach on the Modern Law of Contracts (1897), vol. 2, states the law in regard to contracts in restraint of trade, so far as they are applicable to the present case, as follows : " Section 1562. It is a well settled doctrine that any agreement in restraint of trade is void as being against public policy, unless founded upon a valuable consideration, and, as regards time, space and

the extent of the trade, limited to what is reasonable under the circumstances of the case, for the reason that such contracts tend to deprive the public of the services of parties in the employments and capacities in which they are most useful and so tend to expose the public to the evils of monopoly.   Many authorities declare, in substance, that all restraints are presumed to be bad, but, if the circumstances be set forth, that presumption may be excluded, and the court judge of these circumstances whether the contract be valid or not." Section 1564, as to the validity of such contracts: " The doctrine seems to be that there must not only be a consideration for the contract but there must be a good reason for entering into it; and it must impose no restraint on one party which is not beneficial to the other. . . . . Whether or not a contract is void, as being in restraint of trade and against public policy, and whether the restraint is reasonable are questions of law for the court to determine."   " Section 1567. The present rule in England is that the validity of a covenant which is in restraint of trade, whether the restraint be general or partial, depends upon its reasonableness.   Such a covenant may be limited in point of space, provided that it is not more than is reasonably necessary for the protection of the covenantee and is in no way injurious to the interests of the public."   " Section 1569. The tendency of modern thought and decisions has been no longer to uphold in its strictness the doctrine which formerly prevailed respecting agreements in restraint of trade.   The severity with which such agreements were treated in the beginning has relaxed more and more by exceptions and qualifications and a gradual change has taken place, brought about by the growth of industrial activities and the enlargement of commercial facilities which tend to render such agreements less dangerous, because monopolies are less easy of accomplishment.   Whether the restraint be general or partial is no longer considered a material question.   ' The application of the rule does not depend upon the number of those who may be implicated nor the extent of space included in the combination but upon the extent of injury to the public.'   If the natural tendency of such a contract is injuriously to affect public interests, the form and declared purpose are of no moment, the agreement will be void and it matters not whether the restraint be complete or partial.

The apprehension of danger to public interests, however, should rest on evident grounds and courts should refrain from interference with the affairs of citizens, unless their conduct in some tangible form threatens the welfare of the public." These general principles are supported by very many authorities, both in England and in this country, the citation of which is neither necessary nor desirable.

The plaintiff employed the defendant to serve the customers of the former with milk upon one of its milk routes in the city of Erie. The employment is peculiar. The value of the business consists largely in the intimate knowledge of the route and the acquaintanceship of the patrons. Before introducing him to either, the plaintiff required a contract in which "It is expressly agreed by the second party (the defendant), in consideration of his employment as aforesaid and the payment to him of the wages herein provided, that he will not for the space of one year after the termination of this contract, peddle or furnish milk directly or indirectly, or assist or become interested in furnishing milk directly or indirectly in the city of Erie or vicinity, except to the Erie County Milk Association." The consideration for the services was $45.00 per month. The defendant about four months after his employment voluntarily quit the service of the plaintiff and within the prescribed period purchased a milk route in the city of Erie, consisting of about 115 customers, whom he continued to supply up to the time of the filing of the bill.

Was this contract enforceable in equity? We do not understand the appellant to contend that the contract is objectionable, either on the ground of the limitation of time or space, but that it lacks consideration, and that equity has no jurisdiction, unless some substantial and irreparable injury will result from the defendant's acts. In Proctor v. Sargent, 2 M. & G. 20; 40 Eng. C. L. R. 470, it was held that a contract, in which the defendant, in consideration of his employment, agreed that he would not, during the continuance of such service or within the space of twenty-four months after quitting or being discharged from the same, commence the business of a cow-keeper within five miles from Northampton Square in the county of Middlesex; and if at any time during such service or within twenty-four months after the determination thereof, the defendant

should commence such business, that he would pay ten shillings for every day he should act contrary to the agreement, was valid, being limited both in time and space and not appearing to be an unreasonable restraint of trade. In McClurg's Appeal, 58 Pa. 51, it is ruled that a contract restraining the exercise of the profession of medicine within a particular locality, when there is reasonable ground for the restriction, is valid; that its exercise may be restrained by injunction and that the court will not inquire into the adequacy of the consideration. Stofflet v. Stofflet, 160 Pa. 529, related to the trade of a photographer who was restrained by injunction from conducting or maintaining a photograph gallery within the limits of the borough of Bangor. Smith's Appeal, 113 Pa. 580, relates to a contract in which the defendant agreed not to engage in the manufacture of ochre in the county of Lehigh, or elsewhere, in which it was held that the contract was reasonable; that it was divisible as to place and that an injunction was the proper remedy to enforce it. In Patterson et al. v. Glassmire et al., 166 Pa. 230, the defendant sold to plaintiffs all the stocks, fixtures, merchandise and good will now owned and conducted in a certain store in the hair goods business and all the branches thereto appertaining and covenanted not to engage in the said business of hair dealing or any of the branches thereof sold as aforesaid, within eight squares of said place of business. Defendant subsequently opened a hair dressing establishment within two squares of their former store. It was held that defendants should be restrained by injunction from conducting the business of ladies' hair dressing in the new shop which they had opened.

If it affirmatively appeared that the defendant, for the express purpose of becoming acquainted with the streets and by-ways of Erie and with the patrons of the plaintiff or with the people generally had entered the employment of the plaintiff, with a view of subsequently using the information so gained for his own benefit, there can be no doubt but that the decree of the court below would have been sustained, without question. Whether there was such a motive in the mind of the plaintiff does not appear, but it is, nevertheless, true that by the employment he learned all that was necessary for him to know to carry on a business in opposition to that conducted

38    ERIE COUNTY MILK ASSN. *v.* RIPLEY, Appellant.

Opinion of the Court—Dissenting Opinion. [18 Pa. Superior Ct.

by the plaintiff, a knowledge which could scarcely be obtained in any other way.  In Fralich v. Despar, 165 Pa. 24, it was held that an employee who, in consideration of an increase in his wages, agrees not to reveal the secrets of his master's trade which are revealed to him, has no right to use the secrets so obtained for his own private use or reveal them to others.  In such case, equity will interfere to protect the master.  This rule applies, we take it, whether the consideration be an increase in wages or a part of the original consideration.  The prime object of the contract on the part of the plaintiffs was not only to secure the services of the defendant but to protect themselves against the use of the knowledge which he might acquire in the employment against them.  The defendant was the judge of the reasonableness of the consideration.  He made the contract with a full knowledge of what was contained in it.  The court has found that the agreement " was and is reasonably necessary for the protection of the plaintiff's business, and that it was founded upon a valuable consideration and that, from the nature of the case, the plaintiff has no adequate remedy at law."  These legal conclusions based upon the facts found by the court are, in our opinion, justified.  This is not the case of a plaintiff appealing to equity " for the enforcement of a hard bargain."  We think the contract should be specifically enforced.

We have not considered the assignments of error seriatim but have endeavored to discuss, in a very general way, all the principles involved in the case.  The findings of fact and law complained of are all justified by the evidence and are in accordance with well settled principles.  The offers of testimony, as contained in the fifteenth and sixteenth assignments of error, were irrelevant and properly excluded.  The case was well considered and thoroughly discussed by the president judge in the court below and is, in our opinion, free from error.  Decree affirmed.

RICE, P. J., and ORLADY, J., dissent.

ORLADY, J., dissenting:

Specific performance of a hard featured contract should not be enforced by an injunction, but the parties should be left to their remedy at law.

The defendant did not have any good will of an established business to sell, and his employment at ordinary wages is not such a valuable consideration as warrants the special remedy granted by the court below.   The contract is palpably one-sided in that the plaintiff may terminate it on fifteen days' notice, or, if it should conclude that the defendant is incompetent or neglectful, it may immediately discharge the defendant without notice, while the defendant—after the plaintiff is entirely relieved from the contract—is obliged to perform the principal covenant thereof for a year afterwards.

No possible loss is shown, and the apprehended damage, if any, is imaginary and would follow an unreasonable and oppressive exaction, i. e., not to sell to the public a necessary food product.   The contract of employment is without limitation as to time; it is in partial restraint of trade and unfairly restricts the rights of labor.   The business of peddling milk on an established route is not such an unique, skilled or peculiar service as to prevent, by an injunction, a servant from becoming a dealer, or to result in such irreparable damage as cannot be fully compensated in an action for breach of contract, if a change of drivers be made.

I would reverse the decree and dismiss the bill.

I am authorized to say that, RICE, P. J., concurs in the foregoing.