643

## Philadelphia Dairy Products Co., Inc., v. Kleiman

*White & Staples,* for plaintiff.
*David A. Kraftsow,* for defendant.

LEVINTHAL, J., November 15, 1939.—Plaintiff corporation, engaged in the manufacture and distribution of dairy products in Philadelphia, filed its bill of complaint seeking to enjoin defendant, a former employe, from violating the provisions of a restrictive covenant contained in his written contract of employment. It is averred

that after defendant voluntarily resigned as driver-salesman for plaintiff corporation he has been soliciting his former customers for another milk company, that he has succeeded in taking away about 50 of plaintiff's customers, and that if he continues to violate the covenant plaintiff will suffer irreparable harm.

Defendant, in his answer, admits the execution of the contract, but denies that the' route assigned to him by plaintiff corporation was composed of its own customers. On the contrary, he avers that he had his own customers when he entered plaintiff's employ, and that the only persons whom he has solicited or to whom he has sold after the termination of his employment were those customers he had brought with him when he entered plaintiff's employ, and such other customers as he could secure since his resignation. It is further alleged that defendant did not voluntarily resign but that he was forced to abandon his job after an altercation with his foreman. Defendant asks that the bill be dismissed because the contract of employment lacks mutuality, is hard-featured, and therefore is not specifically enforcible.

The only issue is whether the restrictive covenant contained in the employment contract is valid and enforcible by way of injunctive relief.

A preliminary injunction was granted upon injunction affidavits on August 8, 1939, surety having been entered in the sum of $1,000. After a hearing on August 16th, this decree was continued until final disposition of the case.

### Findings of fact

1. Plaintiff is a Pennsylvania corporation engaged in the manufacture and distribution of dairy products in the City of Philadelphia.

2. For three years prior to April 30, 1936, defendant had been employed as driver-salesman for Victor Dairies Company, serving approximately 170 to 180 cus-

tomers in the territory in South Philadelphia bounded by Mifflin, Bigler, Second, and Eleventh Streets.

3. Defendant, for two weeks prior to April 30, 1936, and thereafter, solicited his former customers in an attempt to have them transfer their patronage to plaintiff company.

4. On or about April 30, 1936, defendant was hired by plaintiff as a driver-salesman, and was paid a weekly salary from that date until August 1, 1939, when his employment was terminated.

5. On or about May 6, 1936, defendant was assigned to serve all of plaintiff's customers in plaintiff's route 721, whose boundaries were Sixth and Eleventh Streets, Snyder Avenue and Bigler Street.

6. On May 8, 1936, defendant signed a contract of employment with plaintiff. This contract was superseded by one substantially the same on November 6, 1936, the terms of which appear in plaintiff's bill.

(a) By this contract, the company agreed, inter alia: (1) To employ defendant as a salesman; (2) to pay him a weekly wage and commissions in accordance with the basis established by the company for its route salesman; (3) to assign defendant a route which was to be subject to alteration by the company; (4) to supply defendant with a list of plaintiff's customers upon said route; (5) to make available to defendant its good will upon such route, to provide a route supervisor to assist him in becoming known to the customers, and to supply material for advertising; (6) to dismiss defendant only upon one week's notice or payment of one week's wages except in case of fraud, disregard of duty, or breach of the agreement; (7) to permit defendant to extend credit to customers and to return unsold merchandise within such limits as the company might fix.

(b) On his part defendant agreed, inter alia: (1) To accept employment and abide by the regulations of the company; (2) not to leave the employ of the company except upon one week's written notice; (3) to deposit

security of $150 with the company; (4) not to divulge any information concerning customers of the company turned over to or acquired by him without the consent of the company; (5) not to engage directly or indirectly for six months after the termination of his employ (or six months after the entry of a final injunction if one issued) in the sale, solicitation for sale, or distribution of dairy products in the territory or within one mile of the territory served by him while in plaintiff's employ.

7. Route 721 was formed several days prior to May 1, 1936, and consisted of 150 customers, of whom 140 had previously been served by plaintiff's route 728 and the remainder by plaintiff's route 708. All of these 150 customers had been served by plaintiff for at least one month prior to May 6, 1936, and none had previously been served by defendant.

8. During the months of May, June, and July, 1936, defendant brought about 119 new customers to plaintiff. Of these, at least 20 were acquired between April 30, 1936, and July 1, 1936; the balance represented former customers of defendant whom he was able to bring with him to plaintiff company.

9. Thirty-five of these customers who transferred their patronage to plaintiff were on May 6, 1936, transferred to plaintiff's route 728 and were not subsequently served by defendant.

10. Defendant served as driver-salesman on route 721 continuously from May 6, 1936, until August 1, 1939. About a year after he had been employed the route was altered so as to include the territory bounded by Seventh and Eleventh Streets, Snyder Avenue and Bigler Street. Although some customers were taken away from defendant by this change, at least an equal number of others were added.

11. In addition to paying a weekly wage, plaintiff company conducted a bonus system whereby its salesmen received additional compensation for all products sold above a fixed minimum. In this way the salesmen were paid for

all new customers acquired. Defendant was paid, during the period from April 30, 1936, to August 1, 1939, the sum of $239.50 over and above his weekly wage, for new business. The records of the company show that this constituted consideration not only for customers acquired after April 30, 1936, but also for business brought to plaintiff at the time of entering its employ.

12. On August 1, 1939, defendant voluntarily left plaintiff's employ after an altercation with Mr. Schrager, a route foreman. Defendant has been paid all the salary due him.

13. On the day prior to defendant's resignation only 18 of the customers obtained by defendant in the months of May, June, and July, 1936, or prior thereto, remained as plaintiff's customers on the said route 721.

14. On or about August 5, 1939, defendant secured employment with a competitor of plaintiff. In the course of this employment defendant solicited orders within the territory covered by plaintiff's route 721 and was able to influence at least forty customers formerly served by him to transfer their patronage to Quaker Maid Dairies. Defendant continued such solicitation until restrained by the preliminary injunction.

### Discussion

There can be no doubt that the restrictive covenant in defendant's employment contract is, as it must be, reasonably limited as to time and space: Erie County Milk Assn. v. Ripley, 18 Pa. Superior Ct. 28 (1901). See also Sternberg v. O'Brien, 48 N. J. Eq. 370, 22 Atl. 348 (1891), Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412 (1911), and Note (1935) 98 A. L. R. 963.

Defendant admits that he has breached that covenant, but contends that plaintiff, under the special circumstances of this case, is not entitled to equity's extraordinary injunctive relief. Arguing that his employment contract lacks mutuality, is hard-featured and unconscionable, and that his covenant should therefore be unenforc-

ible in equity, he cites a number of Pennsylvania decisions which, considered superficially, appear to support his position in theory, but which, when the factual situations involved in each are examined, are found to be inapplicable to the instant case.

Thus, in Iron City Laundry Co. v. Leyton, 55 Pa. Superior Ct. 93 (1913), where an injunction was denied on the grounds of hardship, defendant's covenant prohibited him from engaging "in the laundry business" for a period of 90 days, with no limitation as to space. Furthermore, the employer retained the right to discharge defendant for any cause without notice, never assigned defendant to a route, and never supplied him with a list of customers of its own.

American Ice Co. v. Hunter, 60 Pa. Superior Ct. 311 (1915), is equally inapplicable, since that case involved an absolute restriction against engaging in the ice business for one year, with no limitation as to territory. It also appeared that defendant had been discharged without reasonable cause, although the contract was intended as one from year to year.

The case of Seward v. Shields, 9 Dist. R. 583, decided 40 years ago by Judge Sulzberger of Court of Common Pleas No. 2 of Philadelphia County, does appear to be quite analogous to the instant case. An injunction was there denied because the court felt there was no valuable consideration to support the covenant sought to be enforced. Mere employment was said to be no consideration whatever. The $1 mentioned in the writing itself was merely nominal, whereas substantial consideration was required. The $10 weekly wage paid the employe was found to be nothing more than ordinary wages for such work and "not consideration for the abandonment of a valuable right in addition". Much as one may sympathize with Judge Sulzberger's notion that the employment of one man by another should constitute no consideration whatever (because, as he says, "the values on both sides are equivalent. The man wants to be employed, the em-

ployer wants the man"), it is well established by the decisions of the courts of Pennsylvania and elsewhere that employment alone is sufficient consideration to support a restrictive covenant of this kind: American Ice Co. v. Luff, 12 Dist. R. 381 (Phila. C. P. 5, 1903), at page 383, and authorities there cited; Erie County Milk Assn. v. Ripley, supra; Wark v. Ervin Press Corp., 48 F.(2d) 152 (C. C. A. 7th, 1931); Wisconsin Ice & Coal Co. v. Lueth, etc., 213 Wis. 42, 250 N. W. 819 (1933). It should also be noted that Seward v. Shields, supra, is distinguishable from the instant case because of the fact that defendant there had obtained all the customers himself without any aid whatsoever from his employer.

The cases of Shor v. Freeman, 21 D. & C. 111 (Lehigh Co. 1934), and Standard Dairies, Inc., v. McMonagle et al., 35 D. & C. 256 (Phila. C. P. 7, 1939), turn largely upon a want of mutuality in the contract, for in each case the only promises in the agreement ran from the employe to the employer. In neither case did the employer obligate himself by any promise in return for those of the salesman. In addition, the Standard Dairies case contained other features which influenced the court in refusing relief on grounds of hardship.

We are satisfied that defendant's employment contract cannot reasonably be regarded as lacking in mutuality. Of course, mutuality does not require that each party to a contract have precisely the same remedy; it is sufficient that the contract be fair and reasonable and that each party have the means of compelling the performance of the promises mutually agreed upon: Philadelphia Ball Club, Ltd., v. Lajoie, 202 Pa. 210 (1902). In the instant case, plaintiff bound itself to do, and actually did do, many things. It employed defendant, it assigned him a route, it supplied him with a list of customers, it paid him a weekly wage as well as a bonus for additional customers, it assisted him in becoming acquainted with his territory, and it permitted him to extend credit and to return unsold merchandise. Moreover, it actually paid him,

though not obligated to do so, for those customers whose patronage he brought to it when he entered its service. It was also under an obligation not to discharge him without one week's notice or one week's pay. The fact that defendant was assured of only one week's work while his covenant bound him for six months does not evidence lack of mutuality, for it was a situation exactly like this in the Lajoie case that brought forth our modern conception of mutuality. It may be noted in passing that the above promises of plaintiff likewise provide adequate consideration for defendant's covenant, even if the Sulzberger doctrine in the Seward case were deemed valid.

We also fail to see how the enforcement of defendant's obligation will, as contended by him, impose an unreasonable restraint upon him. His covenant is limited in time and space, and attempts to deter defendant's activity only to the extent reasonably necessary to safeguard the legitimate interests of plaintiff. Outside the confines of the relatively small prohibited zone, defendant is free to pursue his occupation.

We are also reminded by defendant of the disparity that exists between the bargaining positions of employer and employe, and of the fact that countless contracts are made under a form of economic duress. We recognize that fact. But it does not follow that all employment contracts are one-sided and unfair, and that the worker should always be relieved of his obligations thereunder in order to strike a balance. The employment here involved is quite peculiar. The success of the business depends to a great extent upon the employe's close and intimate relation with the customers. Consequently, a former employe who can continue to contact those customers after the termination of his contract is in a position to do irreparable damage to his ex-employer by drawing that patronage into other channels. It is this contingency against which the employer seeks to guard by requiring its salesmen to agree to the restrictive covenant. In the absence of bad faith on the employer's part, not only is it

not unreasonable, but it is only fair, to force the employe temporarily to limit his solicitations to other areas in order to give the employer an opportunity to recreate good will among its patrons. Were this not done, there would be a true inequality between the parties, but it would be the servant, not the master, who held the dominant position.

Defendant attempts finally to build a case of hardship upon certain other provisions of the contract. He maintains that the terms were unfair in that they fixed no definite wages but permitted the wage scale to be regulated by the company. There is, however, not an iota of evidence raising doubts as to plaintiff's good faith in paying its men, and the ingenious schemes set forth in defendant's brief whereby plaintiff might manipulate its wage scale to defraud defendant, without breaking the contract, probably never occurred to the employer. Furthermore, such a method of fixing wages as contained in the present contract has been considered and approved by the courts: Erie County Milk Assn. v. Ripley, supra; McAnally v. Person, 57 S. W. (2d) 945 (Tex. Civ. App. 1933).

Nor is it a hard-featured bargain because plaintiff retained the right to discharge defendant for just cause without notice. Defendant feels that this provision is unfair since plaintiff alone could determine whether a fraud or breach of duty had been committed. He fails to realize that any arbitrary action on plaintiff's part would bar it from equitable relief against defendant. In order to enforce a restrictive covenant against a discharged employe, the employer must always be able to show conscionable conduct on his part: American Ice Co. v. Hunter, supra; Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 195 N. E. 747 (1935). The same can be said in defense of the provisions providing for alteration by plaintiff of the route assigned to defendant and for the regulation by the former of the latter's wage scale. Unfair or arbitrary actions on plaintiff's part would de-

prive him of his remedy in equity. But in the present case we are convinced that defendant was in fact treated very fairly by plaintiff during the period of employment, and that the termination of his service was the result of his voluntary resignation.

In view of the foregoing considerations, we have come to the conclusion that plaintiff is entitled to the relief sought. The contract itself contemplates an injunction continuing for six months from the date of this decree. However, the obvious purpose of that provision was to assure plaintiff of six months, uninterrupted by activity on defendant's part, in which to reclaim lost good will. Since the preliminary injunction issued on August 8th has been in effect continuously since that date, plaintiff will be adequately protected by a final decre enjoining defendant's solicitations for six months from August 8, 1939.

### Conclusions of law

1. Defendant was employed by plaintiff in the capacity of driver-salesman under a valid contract of employment dated November 6, 1936.

2. The contract is fair and reasonable in all particulars and does not lack mutuality.

3. The restrictive covenant contained therein is supported by a valuable and fair consideration, and is so limited in time and territory as to be enforcible in equity.

4. Defendant violated the above-mentioned restrictive covenant.

5. Plaintiff is entitled to a final injunction, but not for six months from the date of entry of this final decree, but for six months from the date of entry of the preliminary injunction in this case.

### Decree

And now, to wit, November 15, 1939, it is hereby ordered, adjudged, and decreed that defendant, Julius Kleiman, be enjoined for a period of six months from August 8, 1939, from engaging, directly or indirectly, in any

manner whatsoever in the sale, solicitation for sale, or distribution of dairy products within the territory bounded by Sixth Street, Eleventh Street, Snyder Avenue, and Bigler Street, Philadelphia, or anywhere within a radius of one mile from any point in such territory; each of the parties hereto to bear its own costs.