# Niedland v. Shrenk

*Randolph W. Childs* and *John Stokes Adams, 3rd,* for plaintiffs.

*Francis D. Pastorius,* for defendant.

WATERS, J., June 8, 1955.—Plaintiffs in this equity action seek to enjoin defendant, a former employe of plaintiffs, from breaching a restrictive covenant contained in his contract of employment. Defendant counter-contends that the restrictive clauses operate as an unreasonable restraint of defendant's right of employment and the entire contract is therefore void as being in contravention of public policy. The matter came on for hearing on March 8 and 9, 1955. The parties filed their respective requests for findings of fact and conclusions of law together with supporting briefs on April 25, 1955. There was also filed of record on April 25th a stipulation by counsel that the chancellor find as facts in the case the plaintiffs' first and second requests for findings of fact and the defendant's third, fourth, fifth, sixth, seventh and tenth requests for findings of fact.

From our consideration of the pleadings and the evidence adduced in this case, we make the following

*Findings of Fact*

1. From September 11, 1941, to October 1, 1946, plaintiff, Fred Niedland, trading as Arthur Murray Studios, conducted a studio for the teaching of dancing at 1518 Walnut Street in the City of Philadelphia, under a license agreement with Arthur Murray and Kathryn Murray, trading as Arthur Murray, later assigned by Arthur Murray and Kathryn Murray to Arthur Murray, Inc., a New York corporation, whereby Fred Niedland was granted an exclusive license in the City of Philadelphia, and in the territory within a radius of 50 miles of the City of Philadelphia, to use the name "Arthur Murray", and to advertise the same to prospective students and others, and to conduct a dance school under such name in accordance with the methods developed and published by Arthur Murray and Kathryn Murray, trading as aforesaid.

2. As of October 1, 1946, plaintiff, Fred Niedland, entered into an agreement of copartnership with the plaintiff, Clara B. Niedland, for the conduct of said studio under the firm name and style of Arthur Murray Studios, and thereupon Fred Niedland and Clara B. Niedland, as copartners as aforesaid acquired all the rights of Fred Niedland in and under the license granted by said last mentioned agreement.

3. Since on or about October 1, 1946, and pursuant to said agreement with Arthur Murray and Kathryn Murray and Arthur Murray, Inc., plaintiffs have conducted a downtown studio, which is located at 1520 Walnut Street, Philadelphia, and have conducted additional studios located at 66 West Chelten Avenue, Philadelphia; Sixty-ninth and Market Streets, Upper Darby; 201 Broadway, Camden, N. J.; 44 West State Street, Trenton, N. J., and 613 Penn Street, Reading.

4. In addition to plaintiffs studios, Arthur Murray, Inc., has licensed studios in the State of Pennsylvania

in the following cities: Allentown, Altoona, Erie, Harrisburg, Johnstown, Lancaster, Pittsburgh, Scranton and York. These studios all do business under the Arthur Murray name.

5. In addition to plaintiffs' studios in Camden and Trenton, Arthur Murray, Inc., has licensed studios (franchise holders) in the State of New Jersey as follows: East Orange, Jersey City, Newark, Paterson, Red Bank and Union City. These studios all do business under the Arthur Murray name.

6. Arthur Murray, Inc., has licensed franchise holders who operate studios in over 300 cities in the United States. There are 106 cities in the United States with a population of 100,000 or more and Arthur Murray, Inc., has licensed studios in 99 of these cities. These studios all do business under the Arthur Murray name.

7. Arthur Murray, Inc., has licensed franchise holders in 43 States and the District of Columbia. Arthur Murray, Inc., does not have studios in the following five States which have only 1, 2 or 3 towns of 25,000 population or more: Maine, New Hampshire, North Dakota, South Dakota and Vermont. In the following six States, Arthur Murray, Inc., has licensed franchise holders in each and every city of 25,000 or more population: Arizona, Delaware, Idaho, Nebraska, Nevada, Wyoming.

8. Arthur Murray, Inc., has licensed franchise holders which operate studios in Canada; Sydney, Australia; Melbourne, Australia; Bermuda, B. W. I.; Mexico City, Mexico; Honolulu, T. H.; Oahu, T. H.; Johannesburg, South Africa. These studios all do business under the Arthur Murray name.

9. The population of the Commonwealth of Pennsylvania is 10,498,012.

10. On or about March 26, 1951, plaintiffs as copartners, entered into a contract in writing with de-

fendant, Paul B. Shrenk, Jr., employing the latter for a stipulated compensation as a dancing instructor, supervisor or interviewer, for a period of one month from the date that defendant should complete the course of instruction mentioned in the contract to the satisfaction of plaintiffs, and providing for automatic renewal at the expiration of the term for additional weekly periods from week to week, unless and until terminated by notice in writing from one party to the other.

11. The contract provided, among other things, that plaintiffs (designated as the employer) would make available to defendant (designated as employe) a course of training in dance instruction, in order to fit defendant to teach dancing according to the unique Arthur Murray Methods, and that during such course of training there would be disclosed to employe trade secrets and other confidential information not only as to the Arthur Murray Methods, but the names of pupils and patrons of the employer, and the employe would have occasion at the behest of the employer to meet such pupils and patrons.

12. In addition to other provisions, the contract contained the following:

"The employee agrees that it would be impossible after receiving the training afforded by employer, not to teach dancing without using some or all of the Arthur Murray trade secrets and other confidential information and, accordingly, it is agreed that upon the termination of employee's employment for any cause whatsoever, and for a period of two (2) years thereafter, employee will not . . . within a radius of 25 miles . . . of . . . the employer's studio in Philadelphia . . . without the written consent of the employer, accept employment in any manner relating to dancing . . . or directly engage in teaching dancing to any person."

13. The contract also provided:

"The parties hereto, recognizing that irreparable injury will inevitably result to the employer and to Arthur Murray, Inc. in event of a breach of the terms of this contract on the part of the employee, and result in irreparable damage to employer and the Arthur Murray System, agree that in such event the employer and/or Arthur Murray, Inc. shall be entitled, in addition to any other remedies and damages available and without proof of monetary or immediate damage, to an injunction to restrain the violation hereof by the employee, and all persons acting for or with him or her."

14. Pursuant to the terms of said contract of employment, defendant was employed by plaintiffs from on or about April 3, 1951, to on or about December 31, 1953, when defendant quit the employ of plaintiffs.

15. On or about July 1, 1954, defendant, Paul B. Shrenk, Jr., without the consent of plaintiffs, engaged in teaching dancing at a studio not owned or operated by plaintiffs located at 19 East Chelten Avenue, Philadelphia, a location within 25 miles of plaintiffs' main studio at 1520 Walnut Street, Philadelphia, and on the same street and within a block of plaintiffs' branch studio at 66 West Chelten Avenue, Philadelphia.

16. The business of the Murrays and Arthur Murray, Inc., and of plaintiffs, as copartners as aforesaid, depends largely upon the good will of their pupils and prospective pupils. This good will has been built up over a period of years, and in creating this good will, plaintiff, Fred Neidland, and plaintiffs trading as copartners as aforesaid, and the Murrays and Arthur Murray, Inc. have expended large sums of money in the development of methods of dancing and of dance instruction, in obtaining pupils, in holding conventions and conferences for licensees wherein new methods of dancing and dance instruction are developed

and in establishing and maintaining studios, including plaintiffs' said studios at 1518 Walnut Steet, 1520 Walnut Street and 66 West Chelten Avenue in Philadelphia, in advertising, and in the development of methods of obtaining pupils and the names of persons interested in dancing.

17. During the period when defendant was employed by plaintiffs as hereinbefore set forth, plaintiffs imparted to defendant trade secrets and confidential information as to the methods of dancing and of dance instruction of plaintiffs and Arthur Murray and Kathryn Murray and Arthur Murray, Inc. and the names of pupils of plaintiffs.

18. Although plaintiffs have notified defendant to cease said violations of said contract between plaintiffs and defendant, defendant has continued to violate the provisions of said contract as hereinbefore set forth.

## Discussion

Plaintiffs seek, in this equity action, to enjoin defendant, a former employe, from violating the provisions of a restrictive covenant in his contract of employment. It is unnecessary to repeat the pertinent facts or to review the testimony. Defendant has endeavored to show that plaintiffs did not teach trainees steps that they did not know before; that plaintiffs did not teach trainess anything about teaching pupils to dance; that plaintiffs solely instructed trainees on sales methods for the purpose of inducing pupils to take more lessons. We are fully satisfied that defendant received valuable instruction and learned methodology and information justifying enforcement of the restrictive covenant in the contract.

The propriety and necessity for an injunction in this case is sufficiently set forth in Niedland et al. v. Kulka, 64 D. & C. 418 (1948), wherein the court enforced a contract similar to the one before us, holding

that an employe should be prevented from violating a restrictive agreement after having acquired learning which she did not theretofore have. See, also, Erie County Milk Association v. Ripley, 18 Pa. Superior Ct. 28 (1901) ; A. L. I. Restatement of the Law of Contracts §516(f).

The area of restraint in this case is reasonable and does not run counter to public policy. We are not now concerned with those parts of the contract which purport to protect Arthur Murray, Inc., in various parts of the world. Plaintiff licensee of Arthur Murray, Inc., seeks only an injunction insofar as the contract refers to the area within a radius of 25 miles of plaintiffs' studio in Philadelphia. The law is clear that the doctrine of severability is applicable in Pennsylvania. See A. L. I. Restatement of the Law of Contracts, §518; Monongahela Rivers, etc., Co. v. Jutte, 210 Pa. 288 (1904) ; Harris Calorific Co. v. Marra et al., 345 Pa. 464 (1942) ; Hanlon v. Morrissey, 58 D. & C. 133, 151, (1946). In Worrie v. Boze d/b/a Arthur Murray, 191 Va. 916, a similar covenant was enforced in a limited area. A 25-mile radial area from Philadelphia is reasonable and does not extend beyond the area required for the protection of plaintiffs' business, for whose benefit the restraint is imposed. See A. L. I. Restatement of the Law of Contracts §515(a) ; Henschke et al. v. Moore et al. (No. 1), 257 Pa. 196, 203 (1917).

We make the following

### Conclusions of Law

1. Equity has jurisdiction of the parties and the subject matter.

2. The restrictive covenants of the contract, insofar as they are sought to be enforced in this case, are supported by consideration, are not in unreasonable restraint of trade or contrary to public policy.

3. Defendant has violated the restrictive covenants in said contract by teaching dancing, and plaintiff is entitled to injunctive relief against such violations.

Wherefore, we enter the following

### Decree Nisi

And now, June 8, 1955, the above cause having come on to be heard, it is ordered, adjudged and decreed that defendant, Paul B. Shrenk, Jr., be and he is hereby enjoined from accepting employment in any manner relating to dancing, dancing engagements or exhibitions, dancing lessons or instructions, or lectures in dancing in any form whatsoever, or directly or indirectly engage in teaching dancing to any person, without the written consent of the plaintiffs, within a radius of 25 miles from plaintiffs' dancing studios in Philadelphia.

Defendant shall pay all costs of these proceedings.

The prothonotary is hereby directed to notify the parties or their counsel of the filing of the above adjudication and decree nisi, and unless exceptions are filed within 20 days, or if exceptions having been filed they are dismissed, the decree nisi shall be entered as final by the prothonotary as of course.

### Opinion
### Sur Exceptions to Adjudication

PER CURIAM, October 7, 1955.—Defendant has filed 51 exceptions to the adjudication of the court wherein it was determined to be appropriate to enforce a restrictive covenant contained in defendant's contract of employment with plaintiffs. These exceptions and the arguments thereon restate the original contentions of defendant, all of which were carefully considered in the adjudication. Defendant in the brief filed in support of his exceptions does not discuss the individual exceptions but refers to several aspects of the

law involved with the contention that they govern this matter contrary to the chancellor's conclusions.

Defendant's exceptions 1 through 7 and 39 through 50 apparently are directed to the contention that the restraint provided for in the agreement imposed an unreasonable and unenforceable spatial restraint, having reference to the fifth paragraph of the agreement and citing Lynch v. Bailey, 90 N. Y. S. 2d 359, 275 App. Div. 527, affirmed 300 N. Y. 615, 90 N. E. 2d 484. This contention ignores the chancellor's correct determination that the doctrine of severability of unlawful from lawful restraint is applicable in Pennsylvania.

Defendant bases his second group of exceptions upon the contention that plaintiff has failed to prove that it has any legitimate business interest or trade secrets to protect by way of a restrictive covenant. The chancellor succinctly disposed of the contention that defendant was taught nothing about dancing or the teaching of dancing as follows: "We are fully satisfied that the defendant received valuable instruction and learned methodology and information justifying enforcement of the restrictive covenant in the contract." From our reading of the record we are in accord.

Defendant contends that the contract is unreasonable because it is greater than is necessary for plaintiffs' protection; that the restriction is unduly harsh and is injurious to the public. We have considered Murray v. Cooper, 268 App. Div. 411, 51 N. Y. S. 2d 935, affirmed in 294 N. Y. 658, 60 N. E. 2d 387 (1944), and Arthur Murray Dance Studios of Cleveland, Inc., v. Witter, 105 N. E. 2d 685, (Ohio Common Pleas Ct. 1952) cited by defendant, but are of the opinion that the reasoning and facts of those cases are not here governing.

We have carefully considered the briefs of the parties and the law as reviewed by the chancellor and are of the opinion that the law has been correctly set forth in the adjudication; that there is little further which we can profitably add to what has been stated therein. We have reviewed and examined the facts found by the chancellor and are of the opinion that such findings are amply supported by the competent and credible evidence adduced in the case. We have also reviewed and examined the inferences which the chancellor drew from the facts so found, the analyses he made of them and the conclusions he drew from them, and concur therein. Finally, we have also reviewed and examined the conclusions of law reached by the chancellor, the decree nisi entered and the reasons assigned therefore and the authorities relied upon, and we concur in such conclusions of law and the order made. We have, however, concluded that the parties should each bear their respective costs and to that extent we shall direct alteration of the decree nisi. Defendant has not considered his exceptions seriatim and it is unnecessary for us to do so. Defendant's exceptions are therefore dismissed and we enter the following

### Final Decree

And now, October 11, 1955, it is ordered, adjudged and decreed that defendant, Paul B. Shrenk, Jr., be and he is hereby enjoined from accepting employment in any manner relating to dancing, dancing engagements or exhibitions, dancing lessons or instructions, or lectures in dancing in any form whatsoever, or directly or indirectly engage in teaching dancing to any person, without the written consent of plaintiffs, within a radius of 25 miles from plaintiffs' dancing studios in Philadelphia, for a period of two years commencing from December 31, 1953.

The parties shall pay their respective costs.