# Philadelphia Towel Supply and Laundry Company, Appellant, *v.* Weinstein.

*Contract—Restraint of trade—Master and servant—Injunction—Equity.*

Where a laundry company employs a driver on wages and commissions for a particular route, giving him a list of the names and addresses of the company's customers along the route, and the driver in consideration of the employment and his wages covenants not to engage on his own account, or as agent for another, in the laundry business in the district assigned to him for one year after his employment ceased, such covenant will be enforced by a court of equity if the driver attempts to violate it; and this is the case although he may have voluntarily withdrawn from his employment with consent of his employer.

Submitted Jan. 31, 1914. Appeal, No. 256, Oct. T., 1913, by plaintiff, from decree of C. P. No. 3, Phila. Co.,

Sept. T., 1913, No. 4,599, on bill in equity in case of Philadelphia Towel Supply and Laundry Company v. Harry T. Weinstein. Reversed.

Bill in equity for an injunction. Before McMICHAEL, J. The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal to award a preliminary injunction.

*Henry A. Hoefler,* for appellant.—The contract was based upon two considerations, each of which was of real benefit, namely, wages and employment, the latter of which has been held in the English cases as being the most valuable, and defendant cannot now raise the question of their adequacy, and the court will not inquire into the adequacy of the consideration.

In McClurg's App., 58 Pa. 51, a contract, never to practice medicine within twelve miles of a particular locality, was enforced.

In Smith's App., 113 Pa. 579, a contract was enforced not to engage in the manufacture of ochre in the county of Lehigh or elsewhere.

In Stofflet v. Stofflet, 160 Pa. 529, a contract, not to establish an opposition photograph gallery in Bangor, was enforced.

In Patterson v. Glassmire, 166 Pa. 230, a contract, not to engage in the business of hair dealing or any of the branches thereof, within eight squares of place of business, was enforced.

In Cooper v. Edeburn, 198 Pa. 229, a contract was enforced, not to engage in the business of civil or mining engineering and surveying in Allegheny county, without the consent of former partner, to whom the retiring partner's interest had been sold.

In Betts' App., 10 W. N. C. 431, a contract was enforced, not to practice medicine within a radius of five miles of a certain place.

In Erie County Milk Assn. v. Ripley, 18 Pa. Superior Ct. 28, a contract was enforced restraining the driver of a milk route from peddling or furnishing milk for one year in the city of Erie.

In Phila. Ball Club v. Lajoie, 202 Pa. 210, a ball player was restrained from playing with a rival ball club, and it was set at rest, that a contract must not be mutual in order to be enforced.

In American Ice Co. v. Luff, 12 Pa. Dist. Rep. 381, a contract not to sell ice within a certain territory or within five squares thereof for one year after ceasing to be in company's employ, was enforced.

In Harbison v. Mawhinney, 8 Pa. Dist. Rep. 697, a contract made by an infant not to go into the milk business for one year after ceasing to be employed, was enforced.

In Eckert v. Gerlach, 10 Phila. 530, an injunction was continued restraining a person from going into the baking business for three years within five squares of former place of business sold to plaintiff.

In Philadelphia Towel Supply & Laundry Co. v. Levey, C. P. No. 4, Sept. Term, 1913, No. 4,710 (not reported) WILLSON, P. J., granted a preliminary injunction December 3, 1913 (same day McMICHAEL, P. J., refused the injunction in the case at bar) upon the same contract, evidence, character of proof and law, as in the case at bar, the defendant only being different, and the one in Laundry Co. v. Levey being a minor.

*Reuben Levi,* for appellee, cited: Harrisburg Base Ball Club v. Athletic Assn., 8 Pa. C. C. Rep. 337.

OPINION BY HEAD, J., July 15, 1914:

The nature of the business in which the plaintiff appellant is engaged is indicated by its name. In the conduct of that business it had divided the city in which it operated into certain sections or routes. In each route its operations were managed by a particular driver in

charge thereof who gathered and distributed the clothes of the company's patrons which were washed at the laundry.   When a driver was employed he was given a list containing the names and addresses of the company's customers, resident along his particular route. In order to stimulate the exertions of the driver in securing new business, his compensation was measured partly by a fixed wage and partly by a commission on the business he was able to secure.   On entering the service of the plaintiff, the defendant, in accordance with the custom of the company, executed an agreement whereby, in consideration of his employment, of the promise of the plaintiff not to discharge him without first giving the notice provided for—except in case of wilful disregard of his duty—, and of the payment of the wage and commissions stipulated for, he agreed that he would not "directly or indirectly, for the space of one year after ceasing from any cause or reason whatever to be in the employ of the party of the first part, engage in the said laundry business or the towel service business as aforesaid on his own account, or as agent or employee of any other person, corporation, etc., within the territory assigned to or covered or served by him, . . . . and that he will not for himself, on his own account or as agent, etc., of any other person or company within the said territory, solicit from or do any laundry work for or furnish any towel service to any customer or customers served by said party of the first part, etc."

After having served the company for about two years and a half the defendant voluntarily gave up his position without any objection on the part of the plaintiff. Within a few days thereafter it was discovered he had taken employment with some competing company and was actively engaged, in the small section of the city embraced in his former route, in soliciting and obtaining laundry work from the patrons of his former employer. He was given notice that he was acting in violation of his contract and requested to desist.   This notice prov-

ing unavailing, the plaintiff filed this bill seeking to have defendant enjoined from further violations of his contract and thus in effect compelling a negative performance of it. Upon a first hearing, after notice, on bill, injunction affidavits and oral testimony, the learned court below refused to award a preliminary injunction and from that order of refusal the plaintiff takes this appeal.

The determination of cases belonging to the class of the one at bar often involves the consideration of important principles, the application of which to an existing state of facts is attended with much difficulty. A careful consideration, however, of the record before us leads us to the conclusion that our case lies well within the boundaries marked by controlling precedents. We are unable to distinguish the contract here involved in any substantial particular from that under consideration by this court in Erie County Milk Association v. Ripley, 18 Pa. Super. Ct. 28. Practically every question raised here was considered in that case and it was there determined that a contract like the one before us was not violative of sound public policy and was therefore enforcible at law or in equity according to the nature of the relief sought. It was further shown that the employment of the defendant and the payment for his services furnished an adequate consideration to support such an engagement by him. It was held that an injunction properly issued to restrain the defendant from interfering with the business of the plaintiff in violation of the covenant of his contract, similar in all respects to the covenant of the present defendant in the case before us. Many authorities were reviewed and they all seem to be in harmony with the conclusion reached. In Philadelphia Ball Club v. Lajoie, 202 Pa. 210, the entire question was again fully considered by the Supreme Court in an exhaustive opinion by Mr. Justice POTTER. The modern doctrine, recognized and followed by the courts, is well summed up in a quotation from the

opinion of Judge Lowell in Sewing Machine Company
v. Union Buttonhole Company, Holmes' Reports, 253,
cited with approval by Mr. Justice Potter, viz.: "I
think the fair result of the later cases may be thus ex-
pressed. If the case is one in which a negative remedy
of injunction will do substantial justice between the
parties, by obliging the defendant either to carry out
his contract or lose all benefit of the breach, and the
remedy at law is inadequate, and there is no reason of
policy against it, the court will interfere to restrain
conduct which is contrary to the contract, although it
may be unable to enforce a specific performance of it."

In dealing with the question of mutuality in a con-
tract, much more stringent in its terms than the one
here before us, the same learned jurist goes on to say:
"We are not persuaded that the terms of this contract
manifest any lack of mutuality in remedy. Each party
has the possibility of enforcing all the rights stipulated
for in the agreement. It is true that the terms make it
possible for the plaintiff to put an end to the contract
in a space of time much less than the period during
which the defendant has agreed to supply his personal
services; but mere difference in the rights stipulated
for, does not destroy mutuality of remedy. Freedom
of contract covers a wide range of obligation and duty
as between the parties, and it may not be impaired,
so long as the bounds of reasonableness and fairness
are not transgressed. . . . We cannot agree that mu-
tuality of remedy requires that each party should have
precisely the same remedy, either in form, effect or
extent. In a fair and reasonable contract, it ought to
be sufficient that each party has the possibility of com-
pelling the performance of the promises which were
mutually agreed upon."

In the present case the defendant makes no denial
that he had invaded, within the time limited, the small
territory which the contract prohibited him entering
for one year after he left the plaintiff's service. It can-

not be successfully contended this contract should be classed with those which are void because they are in contravention of sound public policy. The acts of the defendant complained of are plainly of a kind and nature more or less injurious to the business of the plaintiff. It was not necessary on the preliminary hearing that the plaintiff should, in accurate detail, show the extent in dollars and cents of the injury already suffered. One of the reasons why equity takes jurisdiction in such cases is because of the difficulty of ascertaining the money value of the injury likely to follow from the acts sought to be restrained.

We are impelled, therefore, by the authority of the cases cited, to the conclusion that the plaintiff made out a proper case for the granting of the injunction for which he prayed, and the learned judge below fell into error in refusing to award it.

The order refusing a preliminary injunction is reversed and set aside and the record is remitted to the court below with direction to grant the preliminary injunction prayed for, to remain in force until final hearing or the further order of the court, and a procedendo is awarded. The costs of this appeal to be paid by the appellee. The plaintiff to file an injunction bond in the usual form in such amount as may be fixed by the court below with sureties to be approved by said court or a judge thereof.