## Clark and Clark, Appellants, *v.* Pinkerton.

Argued October 10, 1933.

Before TREXLER, P. J.,
KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER
and JAMES, JJ.

*Leo MacFarland,* for appellant, cited: Erie Milk
Association v. Ripley, 18 Pa. Superior Ct. 28; Phila-
delphia Ball Club v. Lajoie, 202 Pa. 210; Philadelphia
Towel Supply and Laundry Co. v. Weinstein, 57 Pa.
Superior Ct. 290.

*Lester L. Dolfman,* for appellee.

OPINION BY STADTFELD, J., December 16, 1933:

This is an appeal by plaintiff from a final decree dismissing a bill in equity for an injunction.

Plaintiffs filed a bill against defendant asking the court to restrain the defendant for a period of one year from July 30, 1932, from engaging in the laundry business contrary to a written contract of employment. A written contract was entered into on December 28, 1928 between plaintiffs, employers, and defendant, employee, under which plaintiffs agreed to employ defendant as a driver and canvasser for customers for laundry work on a commission basis for the period of one month from said date, and so on from month to month, determinable by plaintiffs at the end of any month upon giving six days' notice of such intention prior to the end of any month, reserving the right to dismiss the defendant for cause at any time within the said period, and without liability for any sum or sums whatever beyond the proportionate amounts due and unpaid at the date of dismissal.

The contract of employment contained the following provision: "3. That the said party of the second part further agrees and covenants that he will not leave the service or cease to serve the party of the first part without the consent of the party of the first part during the period of employment and that he will not, directly or indirectly, for the space of one year after ceasing from any cause or reason whatever to be in the employ of the said party of the first part, engage in the said laundry business as aforesaid, on his own account or as agent or employee, or any other capacity, for any other person or persons, firms, associations, companies or corporations, within the territory assigned to or covered or served by him, or within three squares of any point in or on said territory; and that he will not, directly or indirectly, for

himself on his own account, or as agent or as agent or employee or any other capacity, for any other person or persons, firms, associations, companies or corporations, within the territory assigned to or covered or served by him or within three squares of any point in or on said territory, solicit from or do any laundry work for or furnish any service to any customer or customers served by said party of the first part, whether said customer or customers originally belonged to the party of the first part or were secured by the party of the second part or through his efforts, while in the employ of the party of the first part.''

The defendant continued in the employ of plaintiff until July 30, 1932, when he was discharged because of alleged improper habits and infractions of rules of plaintiffs' establishment. He was paid in advance for two weeks wages and told he was no longer required.

On October 27, 1932, plaintiffs filed a bill against defendant averring that on the execution of the contract aforesaid he was assigned to a certain district in the city of Philadelphia and supplied with a list of the existing customers of plaintiffs' within said district and held out and represented as the special agent and representative of plaintiffs' within said particular section of the city to solicit, collect and deliver laundry to old and new customers, as provided in said agreement; that the said defendant, since his discharge, has by arrangement with another laundry concern, competitors of plaintiffs, been, and now is, operating a truck for the soliciting, collecting and delivery of laundry within the district wherein he had been operating as solicitor and driver for plaintiffs, and calling on plaintiffs' customers, soliciting and collecting laundry, contrary to the terms of his agreement with plaintiffs; that plaintiffs notified defendant in writing on October 19, 1932, that he was conducting the laundry business, contrary to his written agree-

ment with plaintiffs, but defendant refused to cease doing so and expressed his intention of continuing to operate in said district notwithstanding his contract. Plaintiffs then filed this bill seeking to have defendant enjoined from further violations of his contract.

To this bill defendant filed an answer admitting the execution of the contract, and the discharge, but denying that the same was because of improper habits and other infractions of the rules of plaintiffs' establishment, and averring that the discharge was without any cause or reason; defendant admitted his solicitation of work in the district set forth in the bill of complaint and justified the same upon the alleged unwarranted and improper discharge of defendant by plaintiffs.

The case came on for hearing before Reed, P. J. O. C., 47th Judicial District, specially presiding. The testimony ex parte plaintiffs was to the effect that defendant had on numerous occasions been under the influence of intoxicating liquor while on duty, thereby unfitting him for work and had been warned against a recurrence under penalty of being discharged; also that he had on numerous occasions been annoying one of the women employees by trying to force his attentions upon her, thereby interfering with her work, and when one of plaintiff firm remonstrated with him, defendant threatened to punch him in the mouth. Defendant, while admitting that he occasionally took a drink, denied that he was ever intoxicated; he denied having paid attentions to the woman employee or interfered with her work. In answer to the question, "Did you threaten to punch Frank (Clark)?" he replied "No, I did not punch him or threaten to punch him on the nose, as they said. I said, you will have to watch your step here or you are liable to be taking it on the nose. I meant if he didn't stop talking about this other party to me then I was going to have it out with him; in other words settle it, ......"

The chancellor filed an opinion wherein he found the material facts in accordance with the averments of the bill, but stated, quoting from his opinion, "While an employee should be careful of his conduct and refrain from becoming intoxicated or even under the influence of liquor to such an extent as to interfere with his business, and while an employee should be cautious in regard to his conduct towards other employees, yet it is unjust and unconscionable to permit an employer, under an agreement such as has been pleaded in this case, to summarily discharge an employee by reason of slight or technical indiscretions. After considering all the evidence in this case we do not believe the defendant's conduct was such as warranted the plaintiffs in discharging him, and having come to that conclusion it was well within his rights to go out and solicit trade, either on his own behalf or as agent or employee of others."

"...... While the defendant was not wholly free from blame, yet the conduct of the plaintiffs in discharging him was not conscionable in that he should have been given a fair opportunity to explain any alleged misconduct or indiscretions on his part before he was discharged." He directed a dismissal of the bill. From the decree pursuant thereto this appeal was taken by plaintiffs.

The court below relied upon the case of American Ice Co. v. Hunter, 60 Pa. Superior Ct. 311. That was an appeal from an order granting a preliminary injunction, where the terms of the contract were similar to those in the instant case, except that there was no fixed period of employment. That case was disposed of on bill and answer only, no testimony being taken. This court held that the statement in the answer to the effect that defendant was discharged without proper cause must be accepted as true, and to entitle plaintiff to its remedy it must show that it was free from

fault in the controversy. That case is not controlling in the present instance.

We believe that the court erred in its conclusions of law in dismissing the bill under the admitted facts. Defendant admitted his threat to inflict physical punishment on a member of the firm when remonstrated with because of his alleged attentions to a woman employee in plaintiffs' establishment, thereby interfering with her work; this in itself would have warranted the discharge of defendant.

Nor do we think, as intimated by the chancellor, that there was a lack of mutuality in the contract which would deny the remedy sought under the bill. In the case of Phila. Towel Supply and Laundry Co. v. Weinstein, 57 Pa. Superior Ct. 290, we held, in an opinion by our late Brother HEAD, that an injunction properly issued to restrain the defendant from interfering with the business of the plaintiff in violation of the covenant of his contract, similar in all respects to the covenant of the present defendant in the case before us. Quoting from that opinion: "In Philadelphia Ball Club v. Lajoie, 202 Pa. 210, the entire question was again fully considered by the Supreme Court in an exhaustive opinion by Mr. Justice POTTER. The modern doctrine, recognized and followed by the courts, is well summed up in a quotation from an opinion of Judge LOWELL in Sewing Machine Company v. Union Buttonhole Company, Holmes' Reports, 253, cited with approval by Mr. Justice POTTER, viz: 'I think the fair result of the later cases may be thus expressed. If the case is one in which a negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract,

although it may be unable to enforce a specific performance of it.'

"In dealing with the question of mutuality in a contract, much more stringent in its terms than the one here before us, the same learned jurist goes on to say: 'We are not persuaded that the terms of this contract manifest any lack of mutuality in remedy. Each party has the possibility of enforcing all the rights stipulated for in the agreement. It is true that the terms make it possible for the plaintiff to put an end to the contract in a space of time much less than the period during which the defendant has agreed to supply his personal services; but mere difference in the rights stipulated for, does not destroy mutuality of remedy. Freedom of contract covers a wide range of obligation and duty as between the parties, and it may not be impaired, so long as the bounds of reasonableness and fairness are not transgressed. ...... We cannot agree that mutuality of remedy requires that each party should have precisely the same remedy, either in form, effect or extent. In a fair and reasonable contract, it ought to be sufficient that each party has the possibility of compelling the performance of the promises which were mutually agreed upon.''

In the instant case defendant admitted that he had invaded, within the time limited, the territory which the contract prohibited him entering for one year after he left the plaintiffs' service. We believe that the plaintiffs made out a proper case for the granting of an injunction and the learned judge below fell into error in refusing to award it. As more than one year has elapsed since the date of defendant's discharge, the question of the right to an injunction has become moot since the entry of the decree in the lower court. The sole question remaining is that of costs.

The assignments of error are sustained and the decree reversed. Appellee to pay costs.