## Shor v. Freeman

*Aubrey, Friedman & Senger,* for plaintiff; *Louis Stamberg,* for defendant.

HENNINGER, J., May 7, 1934.—Harry N. Shor, plaintiff, employed David W. Freeman, defendant, to conduct a dental office at 724½ Hamilton Street, Allentown, Pa., in the name of Harry N. Shor. There was no definite term of employment nor compensation fixed. On February 14, 1933, shortly after said employment began, defendant signed and delivered the following paper to plaintiff:

"Whereas Dr. H. N. Shor has engaged and is now employing the services of Dr. David Freeman of Pennsylvania, as a practicing dentist in the dental office of the said Dr. H. N. Shor, at 724½ Hamilton Street, Allentown, Pa.

"Now this writing witnesseth, that the said Dr. Freeman, for in consideration of the premises, doth hereby covenant, promise and agree that, upon the termination of his employment by the said Dr. H. N. Shor, he shall and will not either directly or indirectly, on his own account or as manager, employe, or agent for any other person or persons whomsoever, engage in the practice of dentistry at any point within a radius of 10 miles of the said office of Dr. H. N. Shor, in Allentown for a period of 2 years from the date of the termination of his employment.

"Witness the hand and seal of the said Dr. Freeman this 14th day of February, 1933, A. D.

"DAVID W. FREEMAN, DhG. (Seal.)
"Signed, Sealed and delivered
    in the presence of
        "MARIE KLECKNER."

Defendant remained in plaintiff's employ until February 3, 1934, when plaintiff, as alleged in the bill in equity, discharged him for cause. On March 8, 1934, defendant opened a dental office at 708 Hamilton Street, Allentown, Pa., a half square away from plaintiff's office.

On March 21, 1934, plaintiff filed a bill in equity to restrain defendant from conducting said office, to which defendant filed preliminary objections, stating that the contract lacks mutuality of remedy and of obligation and that there is a full, complete, and adequate remedy at law.

On the basis of several recent decisions in our county, clearly plaintiff cannot maintain his action: Penn Coat & Apron Supply v. Hunsicker, 14 Leh. L. J. 108; Freeman's Dairy v. Iobst, 15 Leh. L. J. 375; General Baking Co. v. Schaffer, 15 Leh. L. J. 248.

These cases were decided upon the authority of Iron City Laundry Co. v. Leyton, 55 Pa. Superior Ct. 93, in which Judge Orlady (following the reasoning in

his dissenting opinion in Erie County Milk Assn. v. Ripley, 18 Pa. Superior Ct. 28) held that the case is one for specific performance of a hard-featured contract.

We might rest our decision on these cases, but counsel for plaintiff contends that the Lehigh County courts are out of step with other courts in Pennsylvania on this proposition, and that he is entitled to a new deal, so far as employment contracts are concerned. It is not our purpose either to criticise or to follow blindly these decisions, but to accord them the careful consideration which the pronouncements of so distinguished and learned judges as our colleague and our predecessor deserve.

It is probably safe to say that no such contract was enforced in Pennsylvania prior to the three-to-two decision of our Superior Court in the Erie County case above cited. There had, it is true, been restraints upon engagement in certain kind of business within a specified radius or community theretofore, but in each case, the person restrained had disposed of his goodwill for a valuable consideration to the respective plaintiff, and had voluntarily retired from such business and employment and was restrained from trying to regain what he had already sold: McClurg's Appeal, 58 Pa. 51; Patterson et al., trad. as Brauning Co., v. Glassmire et al., 166 Pa. 230; Stofflet v. Stofflet, 160 Pa. 529; Cooper v. Edeburn, 198 Pa. 229.

There is a possibility that this element existed in the Erie County case also, but the facts are not reported clearly enough to make that certain, and the court does not base its opinion on that fact.

The case of Philadelphia Ball Club, Ltd., v. Lajoie, 202 Pa. 210, is hailed as one opening the equity courts of Pennsylvania to enforcement of restrictive covenants in employment contracts, though here, while the court relaxes the theory of the mutuality necessary for its enforcement, it stresses the uniqueness of Lajoie's position in his field, finds his approval in his contract of the specific remedy involved, emphasizes special considerations in the contract for his submission to such restrictions and employs the remedy by injunction, not for the prime purpose of preventing his breach of the provision against reëmployment, but to compel him to perform for plaintiff the services promised. The Lajoie case can be used as a precedent here, therefore, only in its discussion of the nature of and necessity for mutuality in restrictive employment contracts.

It is now settled that the mutuality necessary to constitute a contract enforceable in equity need not be identical as to the nature and extent of the remedy. The rule in The Singer Sewing-Machine Co. v. The Union Button-Hole and Embroidery Co., 1 Holmes [Mass.], 253, has been cited with approval by numerous Pennsylvania cases and has certainly become the Pennsylvania rule, viz.: "In a fair and reasonable contract, it ought to be sufficient that each party has the possibility of compelling the performance of the promises which were mutually agreed upon."

The Superior Court of Pennsylvania found mutuality in the Erie County case, supra, in Philadelphia Towel Supply & Laundry Co. v. Weinstein, 57 Pa. Superior Ct. 290, and in the very recent case of Clark and Clark v. Pinkerton, 111 Pa. Superior Ct. 150. In all these cases, there was a full written contract of employment with wages and commissions fixed and either a fixed term of employment or a provision requiring a fixed period for notice before discharge without cause.

It refused relief in Iron City Laundry Co. v. Leyton, supra, and in American Ice Co. v. Hunter, 60 Pa. Superior Ct. 311. In both these cases Judge Orlady

expressed his disapproval of this remedy and clearly indicated that the mutuality required was something more than the mere consideration of employment. No matter to what extent the meaning of mutuality has been relaxed, it must still be something more than mere consideration, for without consideration there would be no contract in the first place. In all these cases, it is admitted that a contract exists, and then the court proceeds to inquire into mutuality.

Applying the test in the Singer Sewing Machine case, supra, admitting for the purposes of the argument that a contract exists and that it is fair and reasonable, does each party have the possibility of compelling the performance of the promises mutually agreed upon? We are immediately met with the difficulty that defendant's covenant is in writing and plaintiff's only verbal, subject to the defects of human memory and the possibility of intentional lapse of memory. Then, again, plaintiff has promised nothing. He has not agreed to employ defendant for so long as 1 hour, nor has he fixed any compensation for any services rendered. Defendant was, therefore, from the very inception of the employment, at plaintiff's mercy so far as future employment was concerned, but plaintiff could control defendant's future for a period of 2 years after he decided to part company with defendant. We do not feel that the discharge for cause affects this case, for plaintiff had the right to discharge without cause and could not have been penalized for violation of the contract in any event. Defendant is denied relief because he made no promises which plaintiff could have enforced in any court, and hence the contract lacks mutuality and cannot be enforced in a court of equity.

Now, May 7, 1934, the preliminary objections to the bill in equity are sustained, the preliminary injunction is dissolved, and the bill in equity is dismissed at the costs of the plaintiff.

Edwin L. Kohler, Allentown, Pa.